# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-69V
Filed: July 15, 2024

|  |  |
|---|---|
| J.C.,<br><br>　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　Respondent. | Special Master Horner |

*Danielle Anne Strait, Maglio Christopher & Toale, Seattle, WA, for petitioner.*
*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for respondent.*

### ORDER ON MOTION TO REDACT[1]

On January 17, 2017, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that her influenza ("flu") vaccination she received on February 3, 2014, and her human papillomavirus ("HPV") vaccination she received on February 20, 2014, caused her to develop narcolepsy/cataplexy. (ECF No. 1, p. 1; ECF No. 75, p. 1.) On May 16, 2024, a decision was issued dismissing the case. (ECF No. 84.) Petitioner now moves to redact that decision. For the reasons discussed below, petitioner's motion is **GRANTED.**

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

I.  **Legal Standard**

Vaccine Rule 18(b) effectuates the opportunity for objection contemplated by Section 12(d)(4) of the Vaccine Act, which provides, in relevant part,

> A decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information--
>
> . . . .
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to such information in the decision, the decision shall be disclosed without such information.

§ 300aa-12(d)(4)(B).  The U.S. Court of Appeals for the Federal Circuit has not had occasion to interpret this section of the Vaccine Act.  There are, instead, two competing methods of interpretation endorsed by different decisions in the lower courts.  *See Langland v. Sec'y of Health & Human Servs.*, No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011); *W.C. v. Sec'y of Health & Human Servs.*, 100 Fed. Cl. 440 (2011).

In *Langland*, the Chief Special Master examined a redaction request pursuant to Section 12(d)(4)(B) in the context of the common law traditions regarding redaction and public access, the E-Government Act, and other provisions of the Vaccine Act favoring public disclosure.  2011 WL 802695, at *5-8.  The Chief Special Master concluded that "the party seeking to seal a document faces a burden to show particularized harm outweighing the public interest in disclosure.  This common law background informs the correct construction of the language in section 12(d)(4)(B)(ii), and militates against routine redaction of all sensitive medical information from special masters' decisions."  *Id.* at *8.  Upon review of the redaction request at issue, the Chief Special Master concluded that the request was unsupported and only a redaction of the petitioner's minor child's name to initials and redaction of the child's date of birth was appropriate.  *Id.* at *11.

However, the Chief Special Master also observed that:

> One may readily conceive of medical information in a vaccine case that might be redacted by a special master, upon receiving a proper motion in accordance with Vaccine Rule 18(b), as meeting the 'clearly unwarranted' criterion.  Facts involving sexual misconduct or dysfunction, family medical history not pertinent to the vaccinee's claim, unrelated mental illness, or

2

> medical conditions inherently likely to bring opprobrium upon the sufferer, might well be redacted upon a proper motion. Such redaction decisions can only be reached on a case-by-case basis.

*Id.* at *9 (footnote omitted).

Subsequently, in *W.C.*, the Court of Federal Claims reviewed a redaction request in the context of the Freedom of Information Act (FOIA), which the court observed to employ language similar to Section 12(d)(4)(B) of the Vaccine Act. 100 Fed. Cl. at 458. The court focused on the idea that petitioner's request "must be weighed against the government's interest in public disclosure." *Id.* at 460-61. Focusing specifically on the identity of the petitioner, the court observed that it is the petitioner's medical history and adverse vaccine reaction, and not petitioner's own specific identity, that the public has an interest in seeing disclosed. *Id.*

*W.C.* has been interpreted as providing a more lenient standard for redaction as compared to *Langland*. *See, e.g.*, *K.L. v. Sec'y of Health & Human Servs.*, 123 Fed. Cl. 497, 507 (2015) (noting that the Special Master below "argued that even when a Special Master follows the lenient standard for redaction set forth in *W.C.*, requests for redaction have been denied because they failed to substantiate the basis for the request"). Nonetheless, special masters do not abuse their discretion by requiring petitioners to affirmatively demonstrate that redaction is justified regardless of which approach is preferred. *Id.* at 507-08 (finding that the special master's requirement that petitioner provide "sufficient cause to justify redaction" is not contrary to the Vaccine Act or prior precedent and explaining that "[e]ach Special Master must review every case and exercise his or her discretion, given the specific facts presented in that particular case").

## II.   Party Contentions

In her motion, petitioner requests that her identifying information be removed from the decision. (ECF No. 85.) Stressing the above-discussed *W.C.* decision, petitioner asserts that, although there is public interest in the substantive details of the case, there is not any public interest in knowing her own identity. Thus, a balancing of interests favors the requested redaction. (*Id.* at 5.) Petitioner raises two specific factors that she asserts favor redaction. First, the condition at issue, narcolepsy, is subject of misinformation and dramatization. Second, and relatedly, disclosure of her condition, along with discussion of her body weight, may engender employment discrimination and affect her employment prospects. (*Id.* at 2-3.) Petitioner stresses her need to support her children and argues that "[i]n the case *sub judice*, Petitioner has found success treating her condition with a particular medication and accommodation for it, let alone disclosure of it, may not be necessary in the employment setting." (*Id.* at 2, 4.) Petitioner cites my prior decision in *A.T. v. Sec'y of Health & Human Servs.*, No. 16-393V, 2022 WL 819583 (Fed. Cl. Spec. Mstr. Jan. 13, 2022), wherein I redacted a prior decision involving narcolepsy.

3

In response to petitioner's motion, respondent provided a recitation of the relevant case law, namely a comparison of the above-discussed *Langland* and *W.C.* decisions. (ECF No. 86, pp. 2-3.) However, citing the language of the Vaccine Act indicating that decision of special masters "shall be disclosed" (§ 300aa-12(d)(4)(B)), respondent stresses that "when petitioners file petitions requesting compensation under the Act, they do so with knowledge that the Act calls for decisions addressing the merits of the petitions, which will necessarily contain their medical information and will be made available to the public." (*Id.* at 4.) Respondent continues:

> Congress's requirement that decisions of special masters "shall be disclosed" is evidence that Congress recognized the public's interest in understanding the bases for the special masters' adjudication of the merits of these claims. Respondent likewise acknowledges that there is a privacy interest inherent in all medical information. Yet, the Vaccine Act's use of the term "clearly unwarranted invasion of privacy" to define which information is suitable for redaction requires a petitioner to show some additional privacy interest to justify redaction of a decision. Without such a showing, redaction is not appropriate.

(*Id.*) Respondent argues that there is a significant competing public interest in limiting the number of cases wherein the case caption is reduced to initials. (*Id.*) He contends that full case captions are necessary to the administration of the program, because the parties rely upon unique case captions to differentiate prior precedent. (*Id.* at 4-5.)

> With regard to this case, respondent argues that
>
> petitioner has not made a particularized showing for redaction. Rather, the basis given rests on a perceived threat of discrimination due to having narcolepsy with cataplexy. The same allegation would apply to any petitioner who brings a narcolepsy claim in the Program, so long as they are of working age and not disabled.

(ECF No. 86, p. 4 (emphasis omitted).)

Nonetheless, respondent "defers to the sound discretion of the Special Master to determine which remedy strikes the appropriate balance between the public and private interests in this instance." (ECF No. 86, p. 5.) "Respondent does not believe it is appropriate to advocate in favor of disclosure of petitioner's information in any particular case, including this one, but rather defers to the Special Master's judgment as to whether petitioner's Motion should be granted, applying the analytical framework discussed above." (*Id.*)

4

In reply, petitioner disputes respondent's premise that vaccine petitioners know at the outset that their medical information will be disclosed. (ECF No. 87, pp. 1-2.) Petitioner contends that respondent's reasoning is based on circular logic. (*Id.* at 2.) Petitioner argues that "[t]he implication that public interest is in accessing a petitioner's sensitive medical information is more akin to the logic of prying tabloid, not the checks and balances on a healthy judiciary." (*Id.* at 4.) Petitioner also argues at length that respondent is incorrect in asserting that reducing case captions to initials creates an administrative burden and, further, that any such administrative burden should not be prioritized. (*Id.* at 5-8.)

Regarding respondent's contention that she has not presented a particularized showing to justify redaction, she contends that, while she agrees she must make some showing, the circumstances need not be entirely unique to her. (ECF No. 87, p. 4.) She characterizes respondent's argument that all narcolepsy cases will end up redacted as an unpersuasive slippery slope argument. (*Id.* at 5.) Moreover, she argues that the threat of employment discrimination is more than merely theoretical, citing literature regarding health status and employment discrimination. (*Id.* at 4.) Petitioner contends:

> Petitioner's concerns regarding her employment are particular to her. Narcolepsy greatly affected her life prior to her current medical regimen. The Decision discusses her inability to work, to live independently, to care for her children, and to drive, as well as having to abandon the CPA exam required for her to become an accountant. Decision, slip op., at 6-7.

(*Id.* at 3.)

### III. Discussion

Petitioner reasonably points out that, especially given the availability of an opportunity to seek redaction, petitioners do not know at the outset of their case that their medical information will invariably be placed in the public sphere. However, respondent is nonetheless persuasive in noting that the type of disclosure petitioner wishes to avoid is an expected, even if not inevitable, part of this program's petition process. It therefore does not in itself constitute a "clearly unwarranted" invasion of petitioner's privacy. Even granting the specific relief requested, petitioner's full name will still appear in the Federal Register as having filed this petition in the program. § 300aa-12(b)(2). Consistent with respondent's broader discussion within his motion response, this provision of the Vaccine Act requiring publication of a notice of each petition, especially when read in conjunction with the "clearly unwarranted" language of Section 12(d)(4)(B), underscores that the statute did not contemplate affording petitioners anonymity as a matter of course. Even still, as discussed in *W.C.*, the public does not *per se* have an interest in disclosing petitioner's identity in connection with the decision dismissing the case. Ultimately, a balancing of considerations is necessary

and, as discussed above, petitioners do bear a burden of demonstrating that redaction is appropriate, even under the comparatively lenient analysis in the *W.C.* decision. *K.L.*, 123 Fed. Cl. at 507-08 (finding that the special master's requirement that petitioner provide "sufficient cause to justify redaction" is not contrary to the Vaccine Act or prior precedent and explaining that "[e]ach Special Master must review every case and exercise his or her discretion, given the specific facts presented in that particular case"). Here, after balancing the competing concerns presented by the parties, I find that this case represents a close call, which I therefore conclude favors the redaction request, even if only barely.

Petitioner represents in her motion that, with a successful treatment regime, she may be able to seek employment in the future; however, she testified during the hearing that at least at that time she was unable to work, was not seeking work, and was supporting her family with social security disability benefits. (Tr. 29-30.) Accordingly, petitioner's employment concern is effectively hypothetical based on the record evidence. However, the fact that petitioner receives social security disability benefits does not mean she will never again seek employment or that it is unreasonable for her to seek to preserve that opportunity. In that regard, petitioner further argues that her condition as reflected in the decision is not consistent with her current level of disability. In any event, with or without future employment, and consistent with my prior decision in *A.T.*, I am persuaded that the nature of the particular condition at issue is such that petitioner has a reasonable fear of prejudice, especially given the severity of her condition as reflected in the decision and the degree to which it was noted to have impacted petitioner's daily life and ability to function. 2022 WL 819583, at *2. I agree with petitioner's assertion in her motion that narcolepsy exists in the public mind in a dramatized and potentially misinformed manner. This distinguishes the condition from many other autoimmune conditions commonly seen in this program.[3]

Although this case lacks the additional factors that further favored redaction in *A.T.*, respondent's slippery slope argument – that all narcolepsy cases will be eligible for redaction – is not persuasive. The conclusion in this case is based not merely on the nature of the condition, but also consideration of the details of petitioner's medical history as included in the decision at issue. Redaction in future narcolepsy cases will still be decided on a case-by-case basis. But in any event, the program is not overrun with narcolepsy cases and, if the condition at issue warrants it, it is not a bad thing to treat like cases alike with respect to redaction requests. As petitioner argues, there is no requirement that the circumstances favoring redaction be completely unique to this

---

[3] In *Langland*, *supra*, the Chief Special Master called out "sexual misconduct or dysfunction, family medical history not pertinent to the vaccinee's claim, unrelated mental illness, or medical conditions inherently likely to bring opprobrium upon the sufferer" as conditions likely to meet the standard for redaction. 2011 WL 802695, at *9. To be clear, I am *not* concluding that narcolepsy rises to this level of concern. A key consideration in this case, consistent with *W.C.*, is that petitioner is not seeking redaction of any substantive information, only her name.

petitioner. I do agree with respondent that there is some administrative burden created when a case caption is reduced to initials. However, what concerns respondent is an aggregate burden. Prior practice has demonstrated that, in any individual case, it is not onerous to reduce a caption to initials. Therefore, though a reasonable consideration, this factor alone should not be given dispositive weight.

## IV.     Conclusion

Petitioner's motion is **GRANTED**. All references to petitioner's name in the caption and body of the May 16, 2024 Decision will be redacted to instead read "J.C." Additionally, the Clerk of this Court is hereby instructed to change the caption of this case to the caption above.


**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master
